IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHNNY LOCUST, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-0161-CVE-TLW |
| | ) | |
| DAVID PARKER, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner is a state inmate and appears *pro se*. Before the Court is the petition for writ of habeas corpus (Dkt. # 1). Respondent filed a response (Dkt. # 11) to the petition and provided the state court record (Dkt. ## 11, 12, 13) for the Court's use in resolving the claims raised in the petition. Petitioner filed a reply (Dkt. # 14) to the response. For the reasons discussed below, the Court finds the petition for writ of habeas corpus should be denied.

*BACKGROUND*

During the early morning hours of March 2, 2004, Joseph Chamberlain forcibly dragged petitioner Johnny Locust out of the apartment he shared with his common-law wife, Rebecca Brown, and various members of her family, including her daughters, granddaughters, grandson, and brother. According to family members, three children were sleeping in an upstairs bedroom. One of the children, 11-year old R.B., awoke when she felt someone grabbing her shoulder and pulling her. When she opened her eyes, she saw petitioner and started screaming. Her screams caused her sister to start screaming. The adults present in the apartment, including Chamberlain, were awakened. Chamberlain found petitioner on all fours next to the bed where the children had been sleeping. He pulled petitioner out of the room and dragged him out of the apartment. The police arrived and

arrested petitioner for public intoxication.  He was ultimately charged with First Degree Burglary

(Count 1) and Failure to Register As Sex Offender (Count 2) in Tulsa County District Court, Case

No. CF-2004-1441.  Prior to trial, petitioner wrote a letter to the Chamberlain family requesting

forgiveness.

On September 21-22, 2004, petitioner was tried by a jury.  Upon petitioner's motion, Count

2 was severed from the trial.[1] Chamberlain, Brown, R.B., and two of Brown's adult daughters, Oleta

Brown and Jonita Battiest, testified at trial. Steven Johnson, the police detective who interviewed

petitioner a few days after the incident, also testified for the State. Petitioner testified in his own

defense. He testified that he had been drinking at TJ's Tavern, located within walking distance of

Chamberlain's apartment, with Chamberlain and Jonita Battiest on the night of the incident and that

he went to Chamberlain's apartment with Ms. Battiest.  He admitted that he was "skunk drunk" but

denied ever being in the children's bedroom.  He accused R.B. and her family of lying. At the

conclusion of a two-stage trial, the jury found petitioner guilty of First Degree Burglary, After

Former Conviction of a Felony. The trial judge sentenced petitioner in accordance with the jury's

recommendation to twenty (20) years imprisonment and imposed a $5,000 fine.  At trial, petitioner

was represented by attorney Jack Winn.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals ("OCCA").

On direct appeal, petitioner, represented by attorney Jarrod Stevenson, raised the following four (4)

propositions of error:

---

[1]On May 4, 2005, petitioner entered a plea of guilty to Count 2, Failure to Register as a Sex
Offender.  He received a sentence of two (2) years imprisonment to be served concurrently with the
sentence imposed for Count 1. See http://www.oscn.net/applications/oscn/
GetCaseInformation.asp?number=CF-2004-1441&db=Tulsa&submitted=true.

I:      The trial court erred in not properly instructing the jury in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article Two, Section Twenty of the Oklahoma Constitution.

II:     Mr. Locust's convictions [sic] must be reversed because the evidence presented by the State was insufficient to prove his guilt beyond a reasonable doubt in violation of the Fifth And Fourteenth Amendments to the United States Constitution and Article Two, Section Seven of the Oklahoma Constitution.

III:    Mr. Locust received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article Two, Section Twenty of the Oklahoma Constitution.

IV:     The accumulation of error in this case deprived Mr. Locust of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article Two, Section Seven of the Oklahoma Constitution.

(Dkt. # 11, Ex. 1).  On April 3, 2006, in Case No. F-2004-997, the OCCA found merit to petitioner's claim based on the trial court's failure to give the jury an instruction on the defense of consent to enter the premises, but found the error to be harmless.  The OCCA found the other claims lacked merit and affirmed the Judgment of the state district court. However, the OCCA found plain error because petitioner's conviction for First Degree Burglary required him to serve 85% of his sentence before being eligible for parole consideration and the direct appeal was pending when the OCCA issued its opinion in Anderson v. State, 130 P.3d 273 (Okla. Crim. App. 2006) (holding that juries should be instructed that a defendant will be required to serve 85% of his sentence before being eligible for parole consideration).  Therefore, the OCCA *sua sponte* modified petitioner's sentence to fifteen years imprisonment. See Dkt. # 11, Ex. 3 at 4.   Petitioner did not file a petition for writ of *certiorari* at the United States Supreme Court nor did he seek post-conviction relief in the state courts.

On March 15, 2007, petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). Petitioner identifies the same four (4) grounds of error raised in his state direct appeal.  He asserts

3

that the OCCA's decision denying relief was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court. See Dkt. # 1.  Respondent

filed a response (Dkt. # 11) to the petition and asserts that under 28 U.S.C. § 2254(d), petitioner is

not entitled to habeas corpus relief.

### *ANALYSIS*

**A.  Exhaustion/Evidentiary Hearing**

Before addressing the claims raised in the petition, the Court must determine whether

petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455

U.S. 509, 510 (1982). Respondent concedes and the Court agrees that petitioner's claims, as raised

in the petition, were presented to the OCCA on direct appeal and are exhausted.

The Court also finds that petitioner is not entitled to an evidentiary hearing.  See Williams

v. Taylor, 529 U.S. 420 (2000).

**B.  Claims adjudicated by the OCCA**

When a state court has adjudicated a constitutional claim, a petitioner may obtain federal

habeas relief only if the state decision "involved an unreasonable application of clearly established

Federal law, as determined by the Supreme Court of the United States" or "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." See 28 U.S.C. § 2254(d); Bell v. Cone, 535 U.S. 685, 694 (2002); Williams v. Taylor,

529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  In this case,

the OCCA adjudicated petitioner's claims on direct appeal.  Therefore, the claims shall be reviewed

pursuant to § 2254(d).

### *1. Improper jury instructions (ground 1)*

As his first proposition of error, petitioner claims that the trial court improperly instructed

the jury.  Specifically, petitioner alleges that the trial court erred by failing to instruct on his theories

of defense: consensual entry and voluntary intoxication.  In resolving these claims, the OCCA

determined that:

> . . . Appellant presented sufficient evidence of consent to enter the premises to
> warrant a jury instruction in the language promulgated by this Court in *Roberts v.*
> *State*, 2001 OK CR 14 ¶ 19, 29 P.3d 583, 589.  Trial counsel's deficient performance
> in not requesting this instruction did not relieve the trial court of its responsibility to
> give it, and plan error occurred.  *Roberts*, 2001 OK CR 14 ¶ 18, 29 P.3d at 589.
> However, the failure to give the instruction in this case was harmless beyond a
> reasonable doubt, and we will not reverse due to the error.  20 O.S. 2001 § 3001.1;
> *Simpson v. State*, 1994 OK CR 40 ¶ 13, 876 P.2d 690, 695.  We further find the trial
> court properly refused Appellant's requested instruction on voluntary intoxication.
> *Jackson v. State*, 1998 OK CR 39 ¶¶ 36-38, 964 P.2d 875, 892.

(Dkt. # 11, Ex. 3).

Federal habeas corpus relief is not available for alleged errors of state law, and, when an

allegedly erroneous instruction is given, this Court examines only "'whether the ailing instruction

by itself so infected the entire trial that the resulting conviction violates due process.'"  Estelle v.

McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  Stated

another way, "'[h]abeas proceedings may not be used to set aside a state conviction on the basis of

erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally

unfair as to cause a denial of a fair trial in the constitutional sense.'"  Shafer v. Stratton, 906 F.2d

506, 508 (10th Cir. 1990) (quoting Brinlee v. Crisp, 608 F.2d 839, 854 (10th Cir. 1979)).

Furthermore, where a petitioner challenges the trial court's refusal or failure to give a specific

instruction, this Court uses a highly deferential standard of review in evaluating the alleged error.

Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir. 1999).  The burden on a petitioner attacking a state

court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)). An error in the issuance of jury instructions is subject to harmless error analysis on habeas review. Cf. Gardner v. Galetka, 568 F.3d 862, 884-85 (10th Cir. 2009) (quoting Scoggin v. Kaiser, 186 F.3d 1203, 1207 (10th Cir. 1999)). Error is harmless if it "appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Gardner, 568 F.3d at 885 (quoting Neder v. United States, 527 U.S. 1, 15 (1999)).

Upon review of the trial transcript and record, the Court agrees with the OCCA that based on petitioner's testimony at trial, the instruction on consensual entry should have been given. Because the OCCA determined the failure to instruct on the defense of consensual entry was harmless error, this Court reviews whether the failure to instruct is harmless under the standard announced in Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) (a trial error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict"). See Fry v. Pliler, 551 U.S. 112, 121 (2007). The Court finds that the trial court's failure to instruct on the defense of consent did not have a substantial and injurious effect in determining the jury's verdict. The jury instructions provided by respondent reflect that the jury received instruction as to the elements of the crime of Burglary in the First Degree, including the elements of "breaking" and intent to commit the criminal act of assault. See Dkt. # 11, Ex. 4 (Instruction No. 14). In addition, the jury received an instruction providing definitions, including the definition of "criminal intent." See id. (Instruction No. 15). If the jury had found petitioner's testimony that he entered the apartment with the consent of either Joseph Chamberlain or Jonita Battiest to be credible, the jury

would not have found the elements of either breaking or criminal intent.  In other words, the jury

would not have found petitioner guilty of first degree burglary if the jury determined petitioner had

consent to enter.  However, because the jury found petitioner to be guilty of first degree burglary,

the jury had to have found beyond a reasonable doubt that the entry was not consensual. Therefore,

the trial court's failure to provide an instruction on the defense of consensual entry did not contribute

to the verdict and the error was harmless.

Petitioner also claims that the trial court improperly denied his request for an instruction on

voluntary intoxication.  As indicated above, the OCCA determined that the trial court properly

refused to give a voluntary intoxication instruction. During his testimony, petitioner admitted that

he drank a large amount of alcohol on the night he was found inside the Chamberlain apartment.

See Dkt. # 13, Tr. Trans. at 197.  In addition, Jonita Battiest testified that petitioner had a strong

odor of alcohol about him.  Id. at 180.  However, no evidence suggested that petitioner was so

intoxicated that he was not able to form the intent necessary for the crime charged.  Petitioner was

able to recall details of his activities that night, including the name of the bartender, how many

drinks he had, and his actions at the Chamberlain apartment.  Id. at 196-204.  Petitioner has not

demonstrated that he was denied a fair trial by the trial court's refusal to instruct on the defense of

voluntary intoxication. Therefore, he has failed to demonstrate that the OCCA's adjudication of this

claim was contrary to or an unreasonable application of Supreme Court law.

In summary, petitioner has failed to demonstrate that the instructions were so fundamentally

unfair as to deprive him of a fair trial and to due process of law. See Henderson, 431 U.S. at 154.

Therefore, the OCCA's denial of relief on petitioner's claims regarding the omitted instructions was

not an unreasonable application of Supreme Court law, nor was it based on an unreasonable

determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(1),(2).

Petitioner is not entitled to habeas relief on his claim that the trial court improperly instructed the

jury.

### 2. Insufficient evidence (ground 2)

As his second proposition of error, petitioner argues that the State presented insufficient

evidence to support his conviction of First Degree Burglary.  He argues that since all five of the

State's witnesses were asleep when he allegedly committed the offense, the explanation for

petitioner's method of entry into the house was based on nothing more than suspicion and

speculation. See Dkt. # 1.  The OCCA rejected this claim on direct appeal, citing Spuehler v. State,

709 P.2d 202, 203-04 (Okla. Crim. App. 1985), and Easlick v. State, 90 P.3d 556 (Okla. Crim. App.

2004), and finding as follows:

> . . . the direct and circumstantial evidence, and the permissible inferences drawn from
> that evidence, provide sufficient evidence from which a reasonable trier of fact could
> find the essential elements of the charged crime were proved beyond a reasonable
> doubt.

(Dkt. # 11, Ex. 3).

As stated above, a writ of habeas corpus will not be issued on a state claim adjudicated on

the merits unless the claim "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding," id. at § 2254(d)(2). "[A] determination of a

factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth

Circuit authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence

issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2)

and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n.2 (10th Cir. 2001); see also Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004). Under either standard, petitioner's claim in this case fails.

In examining petitioner's sufficiency of the evidence claim, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998). In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility.  Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996).  Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Further, the Court evaluates the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997) (quoting United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986)). Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

This Court looks to Oklahoma law for the substantive elements of First Degree Burglary applicable to the sufficiency of the evidence standard. See, e.g., Spears, 343 F.3d at 1238; see also Jackson, 443 U.S. at 324 n.16. Under Oklahoma law and the facts of this case, petitioner could not

be convicted of First Degree Burglary unless the State proved beyond a reasonable doubt the following elements: (1) breaking, (2) entering, (3) a dwelling, (4) of another, (5) in which a human is present, (6) with intent to commit the crime of Assault. See Okla. Stat. tit. 21, § 1431; see also OUJI-CR 2d 5-12.

Petitioner argues that there was no evidence to support the elements of "criminal intent," "breaking" and "entering." See Dkt. ## 1, 14. As to his claim regarding the elements of "breaking" and "entering," petitioner provides the affidavit of Tulsa Police Officer Kevin Staats, see Dkt. # 1, Ex. A; Dkt. # 14, Ex. C, stating that he "saw no evidence of a break-in" at the victim's apartment. However, both Joseph Chamberlain and Jonita Battiest testified that the front door of the apartment was closed when they went to bed for the night. See Dkt. # 13, Tr. Trans. at 115, 169. Jonita also testified that the only other door into the apartment was closed, see id. at 170. Under Oklahoma law, a defendant's action in opening a door and crossing the threshold into the victim's home satisfied the elements of "breaking" and "entering" necessary for a burglary conviction. Fields v. Gibson, 277 F.3d 1203 (10th Cir. 2002) (citing Dean v. State, 381 P.2d 178, 182 (Okla. Crim. App. 1963) (opening a closed door in order to enter a building constitutes "breaking")).

As to petitioner's claim regarding the element of "criminal intent," Oklahoma law provides that intent may be proven by either direct or circumstantial evidence. Rowland v. State, 817 P.2d 263, 266 (Okla. Crim. App. 1991). The State presented the testimony of five residents of the apartment who all testified either that petitioner was discovered in the children's bedroom or that Chamberlain was dragging him down the stairs or out of the children's bedroom (Dkt. # 13, Tr. Trans. at 113-14, 126, 134, 151-52, 161, 171). Joseph Chamberlain testified that he knew petitioner, but did not invite him to the apartment that night and had never previously invited him to the

10

apartment for "recreational purposes." Id. at 115-16.  None of the other apartment residents knew

petitioner. Id. at 138, 152, 161, 174. R.B. testified that petitioner grabbed her shoulder and pulled

her. Id. at 151. Viewing that evidence in the light most favorable to the prosecution, the Court finds

sufficient circumstantial evidence demonstrated that petitioner had entered the apartment without

permission of the residents and was discovered in the children's bedroom at approximately 2 a.m.

after grabbing R.B.'s shoulder. The Court finds that the evidence, when viewed in a light most

favorable to the State, was sufficient to allow the jury as a rational trier of fact to have found the

essential elements of "criminal intent," "breaking," and "entering" beyond a reasonable doubt

required for a conviction of First Degree Burglary.  Petitioner has failed to demonstrate that the

OCCA's resolution of this claim was contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), or an

unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). See Dockins, 374 F.3d at 939. The

Court finds habeas corpus relief shall be denied on this claim.

### 3. Ineffective assistance of trial counsel (ground 3)

As his third ground of error, petitioner alleges that his trial counsel provided ineffective

assistance when he (1) failed to request a jury instruction on consensual entry, (2) failed to

investigate potentially corroborating witnesses, (3) failed to call Officer Staats as a defense witness,

and (4) failed to investigate petitioner's competency to stand trial. See Dkt. # 1.  In adjudicating this

claim on direct appeal, the OCCA ruled as follows:

> . . . the Court finds trial counsel performed deficiently in not requesting the uniform
> instruction on consent to enter promulgated in *Roberts*, supra.  However, Appellant
> has not shown a reasonable probability that but for trial counsel's omission, the
> outcome of the trial would have been different.  Appellant's showing similarly fails
> to warrant reversal with respect to counsel's alleged failure to investigate possible
> witnesses or present the testimony of Officer Staats. *Lockett v. State*, 2002 OK CR

20, ¶ 15, 53 P.3d 418, 424; *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

   Appellant has also failed to rebut the strong presumption that counsel exercised reasonable professional judgment in not raising Appellant's competency during the trial. *Ochoa v. State*, 1998 OK CR 41 ¶ 11, 963 P.2d 583; *Marshall v. Territory*, 1909 OK CR 43, 2 Okl.Cr. 136, 101 P. 139, 145.

(Dkt. # 11, Ex. 3 (footnote omitted)).

Petitioner in this case is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel unless he demonstrates that the OCCA's adjudication of his claim was an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

> ### a.    *failure to request jury instruction on consensual entry, failure to investigate potentially corroborating witnesses, failure to call arresting Officer Staats*

As his first three bases for his claim of ineffective assistance of trial counsel, petitioner alleges that trial counsel provided ineffective assistance in failing to request that the jury be instructed on the defense of consensual entry, in failing to investigate corroborating witnesses, and in failing to call Officer Staats as a defense witness.  The Court finds that even if these three omissions rise to the level of deficient performance, petitioner has failed to demonstrate that he suffered prejudice as a result of the deficient performance.  First, as discussed above, the OCCA determined that trial counsel performed deficiently in failing to request a jury instruction on the defense of consensual entry.  However, because the jury had to reject petitioner's defense of consensual entry in order to find the elements of first degree burglary, the Court finds that petitioner has not shown that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.

Next, petitioner complains that trial counsel provided ineffective assistance in failing to investigate Sherry Sapulpa as a witness.  Petitioner testified that he went to TJ's Bar to talk to Ms. Sapulpa, an employee of TJ's Bar, about giving him a ride to Jacksonville, Florida, to record music. See Dkt. # 13, Tr. Trans. at 196.  He claims that Ms. Sapulpa could have corroborated that he met Jonita Battiest at the bar and bought her drinks.  Even if trial counsel performed deficiently in failing to investigate Sherry Sapulpa as a potential witness, petitioner has not satisfied the prejudice prong of the Strickland standard. Nothing in the record suggests that trial counsel even knew about Sherry

13

Sapulpa prior to trial.[2]  Furthermore, petitioner testified that he said "hi" to Ms. Sapulpa upon his

arrival at the bar. See id. at 197. He does not claim that Ms. Sapulpa had knowledge of any

purported conversation with Jonita Battiest or of his activities after he left TJ's Bar.  Therefore, he

has not shown there is a reasonable probability that, but for counsel's unprofessional error, the result

of the proceeding would have been different.

As his next claim, petitioner asserts that trial counsel provided ineffective assistance in

failing to contact Officer Staats to explain why burglary charges were not immediately filed.  In his

affidavit, see Dkt. # 1, Ex. A; Dkt. # 14, Ex. C, Officer Staats states that he saw no sign of a break-in

at the apartment and that petitioner was initially charged with public intoxication.  However, as

discussed above, petitioner's entry into the apartment through a closed door without the occupants'

permission is sufficient to satisfy the "breaking" element of First Degree Burglary.  Therefore, even

if counsel performed deficiently in failing to call Officer Staats as a witness, petitioner has not

demonstrated that the results of the proceeding would have been different.

---

[2]The Court notes that a witness for the State, Steven Johnson, testified that in March 2004, he worked as a detective for the Tulsa Police Department. At that time, he interviewed Petitioner regarding the incident giving rise to the charge of First Degree Burglary.  Johnson testified that Petitioner told him he went to TJ's Bar where he saw Mr. Chamberlain. See Dkt. # 13, Tr. Trans. at 188. Petitioner claimed that before Mr. Chamberlain left the bar at about 1:00 a.m., he told Petitioner that he should come over to his house sometime for a visit. Id.  Petitioner stayed at the bar until it closed and then went to Mr. Chamberlain's residence. Id. Mr. Chamberlain let him in. Id. After a few drinks, Petitioner said that Mr. Chamberlain got mad at him, beat him up, and threw him outside. Id. During his interview with Detective Johnson, Petitioner denied ever having gone upstairs or into the children's bedroom. Id. Nothing in Detective Johnson's testimony suggests that Petitioner mentioned Jonita Battiest or Sherry Sapulpa as having played key roles in the events leading up to the incident at Mr. Chamberlain's apartment. Furthermore, Petitioner admitted during cross-examination that he never mentioned Ms. Sapulpa's name during his interview with Detective Johnson. Id. at 207. He also confirmed that during his interview with Detective Johnson he said he had been drinking with Mr. Chamberlain and did not mention Jonita Battiest. Id. at 209. In contrast, during his trial testimony, he stated he drank with Jonita but not with Mr. Chamberlain. Id. at 197-98, 209-10.

14

### b. failure to investigate competency

As his final claim of ineffective assistance of counsel, petitioner claims that trial counsel provided ineffective assistance in failing to investigate his competency to stand trial. In support of this claim as raised on direct appeal, petitioner referenced both the preliminary hearing transcript reflecting that his trial counsel asked Joseph Chamberlain if he knew that petitioner had a mental disability and the sentencing transcript reflecting that petitioner stated he did not understand the proceedings. See Dkt. # 11, Ex. 1. Significantly, however, the fact that a defendant suffers from a mental disability or disease does not necessarily mean he is incompetent. See Ake v. Oklahoma, 778 P.2d 460, 464 (Okla. Crim. App. 1989). "The test used to determine appellant's competency is whether the accused has sufficient ability to consult with his lawyer and has a rational as well as actual understanding of the proceedings against him." Id. (citing Beck v. State, 626 P.2d 327, 328 (Okla. Crim. App. 1981)). As discussed above, petitioner testified in his own behalf at trial. His testimony reflects an understanding of the charge against him and his defenses that he had been invited to the apartment and that he was extremely drunk. See Dkt. # 13, Tr. Trans. at 194-214. Petitioner presents nothing to suggest that he was not competent to stand trial. As a result, he has failed to demonstrate that trial counsel performed deficiently in failing to investigate his competency to stand trial.

In summary, petitioner has failed to demonstrate that the OCCA's rejection of his claim of ineffective assistance of trial counsel was an unreasonable application of Strickland. Under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas corpus relief on this claim.

### 4. Cumulative error (ground 4)

As his fourth proposition of error, petitioner asserts that the cumulative effect of trial errors deprived him of a fair trial. See Dkt. # 1. The OCCA denied relief on this claim. See Dkt. # 11, Ex. 3.

The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990)). In this case, the trial court erred in failing to give an instruction on the defense of consent to enter but the error was harmless. Having rejected each of petitioner's remaining habeas claims, the Court finds no basis for a cumulative error analysis. The OCCA's resolution of petitioner's cumulative error claim was not an unreasonable application of federal law. Petitioner is not entitled to relief on this ground.

### CONCLUSION

After careful review of the record in this case, the Court concludes that petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

2. A separate Judgment shall be entered in this case.

**DATED** this 3rd day of August, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT